ORIGINAL

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| THE UNITED STATES,<br><br>　Plaintiff,<br><br>　v.<br><br>INTERMAX TRADING CORPORATION,<br>INDIRA MANJREKAR,<br>AEGIS SECURITY INSURANCE COMPANY,<br>and WASHINGTON INTERNATIONAL<br>INSURANCE COMPANY,<br><br>　Defendants. | Court No. 08-00117 |

## COMPLAINT

1. This is an action to recover penalties and duties for violations of 19 U.S.C. § 1592 ("section 1592").

2. This Court possesses exclusive jurisdiction to entertain this action pursuant to 28 U.S.C. § 1582.

### Defendants

3. Defendant, Intermax Trading Corporation ("Intermax"), is a New York corporation, which maintained its principal business offices at 250 W. 57th Street, Suite 1216, New York, NY 10107.

4. Upon information and belief, defendant, Indira Manjrekar resides at 10845 SW 138th Street, Miami, FL 33178-6529. Upon information and belief, at all times relevant to this action, Ms. Manjrekar, was an officer and manager at Intermax.

5. Defendant, Washington International Insurance Company ("Washington International"), is an Arizona corporation which maintains its principal offices at 1200 Arlington

Heights Road, Suite 400, Itasca, IL, 60143. Washington National issued surety bond 109404293 upon behalf of Intermax for the period from February 18, 1994 through February 17, 2004.

6. Defendant, Aegis Security Insurance Company ("Aegis"), is a Pennsylvania corporation with its principal offices at 250 E. Park Drive, Swatara Township, Pennsylvania. Aegis issued surety bond 460410775 upon behalf of Intermax for the period from February 18, 2004 through April 20, 2007.

### Administrative Proceedings

7. This action involves 44 importations of polyethylene terephthalate film ("PET film") manufactured by Jindal Polyester Limited/Jindal Poly Films Limited of India ("Jindal") which were entered into the United States by means of multiple material false statements or omissions. See Attachment 1 (list of 44 entries at issue in this case).

8. Intermax was the importer of record for 54 entries of Jindal's PET film during the period from December 26, 2001 through August 14, 2005. The 44 entries at issue in this case were entered between October 24, 2002 and August 14, 2005. Attachment 1.

9. In accordance with section 1592(b), on May 18, 2007, the United States Customs and Border Protection agency ("Customs") issued a penalty notice to Intermax for gross negligence. On May 31, 2007, Intermax filed a petition in response to the penalty notice.

10. On November 19, 2007, Customs ruled that Intermax violated section 1592 in connection with 42 entries of PET film. Pursuant to section 1592(d), Customs demanded payment of $357,599.45 in lost duties in a letter sent to both Intermax and Aegis. Customs also demanded a penalty for gross negligence, in the amount of $1,294,657.99.

11. On January 16, 2008, Customs issued a pre-penalty notice to Intermax for fraud in

connection with 44 entries of PET film. See Attachment 1 (44 entries). Copies of the pre-penalty notice were sent to Aegis and Washington International.

12. On January 16, 2008, Customs issued a pre-penalty notice to Indira Manjrekar for fraud in connection with 44 entries of PET film. See Attachment 1 (44 entries). Copies of the pre-penalty notice were sent to Aegis and Washington International.

13. On January 24, 2008, Customs issued a penalty notice, ruling that Intermax violated section 1592 in connection with 44 entries of PET film. Pursuant to section 1592(d), Customs demanded payment of $370,812.47 in lost duties, plus $11,870.52 in interest. Customs also demanded a penalty for fraud, in the amount of $3,143,570.17. Copies of the penalty notice were sent to Aegis and Washington International.

14. On January 24, 2008, Customs issued a penalty notice, ruling that Indira Manjrekar violated section 1592 in connection with 44 entries of PET film. Pursuant to section 1592(d), Customs demanded payment of $370,812.47 in lost duties, plus $11,870.52 in interest. Customs also demanded a penalty for fraud, in the amount of $3,143,570.17. Copies of the penalty notice were sent to Aegis and Washington International.

15. All administrative notices, petitions for relief and demands for payment (whether or not specifically identified in this complaint) were processed in accordance with applicable laws and procedures.

### False Statements About The Classification Of PET Film

16. From January 1998 through December 2005, Intermax was a small company. Upon information and belief, at no time during this period did Intermax have more than nine employees.

17. Ms. Manjrekar was a Vice President of Intermax. From January 1998 through December 2005, Ms. Manjrekar was principally responsible for customs compliance matters at Intermax.

18. From January 1998 through December 2005, Ms. Manjrekar was principally responsible for Intermax's communications with its customs brokers concerning entry documents for goods imported by Intermax.

19. In July 1998, Ms. Manjrekar, upon behalf of Intermax, sent a letter to Customs requesting a ruling concerning the proper classification for PET film produced by Jindal.

20. In August 1998, Customs sent binding ruling no. NY D80495 to Ms. Manjrekar at Intermax. The ruling identified the proper classification code for the PET film produced by Jindal (described in the July 1998 letter from Intermax) as 3920.62.0000 (code 62).

21. Prior to any of the 44 entries at issue in this case, Ms. Manjrekar and Intermax knew that the proper classification code for the PET film produced by Jindal, and imported by Intermax, was code 62.

22. During the period from December 26, 2001 through August 14, 2005, Intermax imported four specific grades of PET film produced by Jindal: grade J-400, grade J-405, grade J-470 and grade J-950.

23. Customs has obtained directly from Jindal samples of four specific grades of PET film produced by Jindal: grade J-400, grade J-405, grade J-470 and grade J-950, and has tested these products in a laboratory. Based upon the results of these laboratory tests and relevant legal authorities, Customs has determined that the proper classification code for each of the four specific grades of PET film produced by Jindal, and imported by Intermax, was code 62.

24. On December 26, 2001, Intermax imported grade J-470 PET film from Jindal. Upon information and belief, Ms. Manjrekar caused the Jindal invoice to be sent to the customs broker, and upon the invoice, Ms. Manjrekar wrote "3920.62.0000" next to the product description for grade J-470 PET film from Jindal. On December 26, 2001, Intermax properly declared classification code 62, and properly declared a duty rate of 4.2 percent ad valorem, for the grade J-470 PET film.

25. In connection with the entry of PET film produced by Jindal made on December 26, 2001, Intermax failed to meet its reporting obligations concerning the existence of relevant anti-dumping duty ("ADD") and countervailing duty ("CVD") proceedings. However, the United States does not allege fraud in connection with this entry, or any other entry made before October 24, 2002 -- the first entry where Intermax knowingly declared an improper classification.

26. Prior to October 24, 2002, Intermax made ten entries of PET film from Jindal. For all ten entries, Intermax declared classification code 62 for PET film from Jindal, and declared a duty rate of 4.2 percent ad valorem.

27. On July 1, 2002, the United States Department of Commerce ("Commerce") issued a final order establishing countervailing duties upon PET film from India. Notice Of Countervailing Duty Order: Polyethelene Terephthalate Film Sheet And Strip (PET Film) From India, 67 Fed. Reg. 44179 (July 1, 2002).

28. The countervailing duty rate applicable to PET film produced by Jindal (classification code 62) was 20.40 percent ad valorem for entries made on or after July 1, 2002.

29. In 2002, Mr. Samir Banerjee, Jindal's Director of International Marketing, spoke to employees of Intermax, and told them that the four grades of PET film sold to Intermax by Jindal

5

were subject to both ADD and CVD.

30. Intermax never met its reporting requirements with regard to ADD or CVD relevant to the PET film purchased from Jindal.

31. On October 24, 2002, Intermax knowingly declared an improper classification code for grade J-470 PET film produced by Jindal: 3920.69.0000 (code 69). Code 69 merchandise was not subject to ADD or CVD. See 67 Fed. Reg. 44179 (July 1, 2002). Code 69 merchandise entered duty-free.

32. Prior to October 24, 2002, on several occasions, Intermax had declared the proper classification code for grade J-470 PET film produced by Jindal. During administrative proceedings, Intermax never offered any explanation for why it changed the classification code for grade J-470 PET film produced by Jindal when goods were entered into the United States on October 24, 2002.

33. Ms. Manjrekar knowingly caused Intermax to declare an improper classification code for grade J-470 PET film produced by Jindal when such goods were entered into the United States on October 24, 2002.

34. The customs broker who signed the Form 7501 for the October 24, 2002 entry of grade J-470 PET film produced by Jindal was Ms. Heather Gershon. Ms. Gershon has told investigators that Ms. Gershon worked exclusively with Ms. Manjrekar when working on Intermax matters.

35. After the October 24, 2002 entry, Intermax made 43 additional entries of PET film produced by Jindal. Upon seven occasions prior to September 25, 2003, Intermax declared code 62, the proper classification code. Upon six occasions prior to September 25, 2003, Intermax

knowingly declared the improper classification code (code 69). Upon the remaining 30 occasions, after September 25, 2003, Intemax knowingly declared the improper classification code (code 69). Attachment 1.

### Failure To Report ADD And CVD Proceedings

36. In 2002, Mr. Samir Banerjee, Jindal's Director of International Marketing, spoke to employees of Intermax, and told them that the four grades of PET film sold to Intermax by Jindal were subject to both ADD and CVD.

37. At all times subsequent to the conversations with Mr. Banerjee, and beginning no later than October 23, 2002, both Intermax and Ms. Manjrekar knew that Intermax was required to report ADD and CVD proceedings and duties owed in connection with the importations of PET film produced by Jindal.

38. Intermax and Ms. Manjrekar knowingly caused 44 entries of PET film produced by Jindal to be entered into the United States by means of material false statements or omissions concerning ADD and CVD. See Attachment 1 (44 entries). Among other things, Intermax and Ms. Manjrekar failed to identify its entries as subject to ADD and CVD by placing code "03" in box 2 of the various Form 7501 filed for these 44 entries, and failed to report the ADD and CVD case numbers in box 30(b) of the various Form 7501 filed for these 44 entries.. For another example, Intermax and Ms. Manjrekar knowingly made entries by means of inaccurate classifications in order to evade liability for ADD and CVD.

### Discovery Of Fraud

39. In 2005, Commerce reviewed certain sales of PET film produced by Jindal as part of its ADD proceedings. Commerce suspected that Intermax was importing PET film produced by

Jindal without reporting relevant ADD, and Commerce notified Customs. In 2005, Customs discovered that Intermax had entered PET film by Jindal by means of material false statements or omissions.

40. Customs did not discover any customs fraud committed by Intermax in connection with the entries listed on Attachment 1 prior to 2005.

41. This lawsuit, which seeks penalties for customs fraud, is timely filed because the lawsuit has been initiated within five years of the discovery of the fraud.

### Counts 1-44 (Fraud)

42. The allegations contained in paragraphs 1 through 41 are restated and incorporated by reference.

43. Intermax caused the 44 entries of PET film produced by Jindal identified on Attachment 1 to be entered into the United States knowing that the entry documents filed for such entries contained material false statements or omissions.

44. On 44 occasions, Intermax violated section 1592. The degree of culpability for each such violation was fraud.

45. The gross domestic value for the 44 entries identified on Attachment 1 was $3,143,570.17.

46. The total lost duties for the 44 entries (including ADD and CVD) was $370,812.47.

47. Intermax is liable for interest on lost duties, in an amount to be established at trial.

48. The amount of lost duties related to the period when the Aegis surety bond was in effect (exclusive of applicable interest) was $207,951.44. The face value of the Aegis surety bond was $50,000.

49. The amount of lost duties related to the period when the Washington International surety bond was in effect (exclusive of applicable interest) was $162,861.03. The face value of the Washington International surety bond was $50,000.

50. Intermax is liable to the United States for a penalty of $3,143,570.17, or such lesser amount as the Court may deem proper.

51. Intermax is liable to the United States for $370,812.47 in lost duties, plus applicable interest.

52. Ms. Manjrekar caused the 44 entries of PET film produced by Jindal identified on Attachment 1 to be entered into the United States knowing that the entry documents filed for such entries contained material false statements or omissions.

53. On 44 occasions, Ms. Manjrekar violated section 1592. The degree of culpability for each such violation was fraud.

55. Ms. Manjrekar is liable to the United States for a penalty of $3,143,570.17, or such lesser amount as the Court may deem proper.

56. Ms. Manjrekar is liable to the United States for $370,812.47 in lost duties, plus applicable interest.

57. Aegis is liable for $50,000.

58. Washington International is liable for $50,000.

<u>Counts 45-88 (Gross Negligence)</u>

59. The allegations contained in paragraphs 1 through 58 are restated and incorporated by reference.

60. Counts 45-88 are pled in the alternative. To the extent that it is determined that any

9

entry identified on Attachment 1 was made by means of a material false statement or omission, but that Intermax or Ms. Manjrekar did not knowingly make a material false statement or omission in connection with that entry, then the United States alleges that such defendant was grossly negligent when causing the entry to be made by means of a material false statement or omission.

61. For every entry identified on Attachment 1 for which Intermax is not liable for fraud, Intermax is liable to the United States for a penalty for gross negligence, and is liable to the United States for the lost duties, and applicable interest, if such entry was made within five years from the date that this suit was commenced.

62. For every entry identified on Attachment 1 for which Ms. Manjrekar is not liable for fraud, Ms. Manjrekar is liable to the United States for a penalty for gross negligence, and is liable to the United States for the lost duties, and applicable interest, if such entry was made within five years from the date that this suit was commenced.

63. To the extent that Aegis's liability in connection with counts 1 through 44 has not reached the surety bond policy limit of $50,000, Aegis is liable for the lost duties and interest in connection with the entries made when the Aegis surety bond was in effect, if Intermax is found liable for gross negligence for such entries.

64. To the extent that Washington International's liability in connection with counts 1 through 44 has not reached the surety bond policy limit of $50,000, Washington International is liable for the lost duties and interest in connection with the entries made when the Washington International surety bond was in effect, if Intermax is found liable for gross negligence for such entries.

## Counts 89-132 (Negligence)

65. The allegations contained in paragraphs 1 through 64 are restated and incorporated by reference.

66. Counts 89-132 are pled in the alternative. To the extent that it is determined that any entry identified on Attachment 1 was made by means of a material false statement or omission, but that Intermax or Ms. Manjrekar did not knowingly or with gross negligence cause an entry to be made by means of a material false statement or omission, then the United States alleges that such defendant negligently caused the entry to be made by means of a material false statement or omission.

67. For every entry identified on Attachment 1 for which Intermax is <u>not</u> liable for fraud or gross negligence, Intermax is liable to the United States for a penalty for negligence, and is liable to the United States for the lost duties, and applicable interest, if such entry was made within five years from the date that this suit was commenced.

68. For every entry identified on Attachment 1 for which Ms. Manjrekar is <u>not</u> liable for fraud or gross negligence, Ms. Manjrekar is liable to the United States for a penalty for negligence, and is liable to the United States for the lost duties, and applicable interest, if such entry was made within five years from the date that this suit was commenced.

69. To the extent that Aegis's liability in connection with counts 1 through 88 has not reached the surety bond policy limit of $50,000, Aegis is liable for the lost duties and interest in connection with the entries made when the Aegis surety bond was in effect, if Intermax is found liable for negligence for such entries.

70. To the extent that Washington International's liability in connection with counts 1

through 88 has not reached the surety bond policy limit of $50,000, Washington International is liable for the lost duties and interest in connection with the entries made when the Washington International surety bond was in effect, if Intermax is found liable for negligence for such entries.

## Demand For Jury Trial

71. The United States demands a trial by jury.

WHEREFORE, the United States respectfully requests that the Court enter judgment in favor of the United States against Intermax and Ms. Manjrekar, jointly and severally, for a fraud penalty in the amount of $3,143,570.17, and for lost duties in the amount of $370,812.47, plus statutory interest. In the alternative, the United States respectfully requests that the Court enter judgment in favor of the United States against Intermax and Ms. Manjrekar, jointly and severally, for a gross negligence or negligence penalty, in an amount to be determined at trial, and for lost duties, in an amount to be determined at trial. The United States also respectfully requests that the Court enter judgment in favor of the United States against Aegis in the amount of $50,000, and against Washington International in the amount of $50,000. In addition, the United States respectfully requests that the Court grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

FRANKLIN E. WHITE, JR.
Assistant Director

JAMES W. POIRIER  
Attorney  
Department of Justice  
Civil Division  
Commercial Litigation Branch  
1100 L Street, N.W.  
Attn: Classification Unit, 8th floor  
Washington, DC 20530  
Tel: (202) 616-0856  
Fax: (202) 514-7969

April 11, 2008        Attorneys for Plaintiff

# Attachment 1

| ENTRY DATE | ENTRY NUMBER | CORRECT HTS# |
|---|---|---|
| 10/24/2002 | D52-04838002 | |
| 11/1/2002 | D52-05545606 | Yes |
| 12/26/2002 | D52-05546646 | Yes |
| 1/17/2003 | D52-05547024 | Yes |
| 1/24/2003 | E69-03037523 | |
| 2/4/2003 | D52-04852151 | |
| 4/13/2003 | D52-04858976 | |
| 4/28/2003 | E69-03048116 | |
| 5/13/2003 | D52-04862614 | |
| 6/13/2003 | D52-05548691 | Yes |
| 6/16/2003 | D52-04867415 | |
| 8/4/2003 | D52-05549038 | Yes |
| 9/9/2003 | D52-05549525 | Yes |
| 9/25/2003 | D52-05549632 | Yes |
| 10/27/2003 | E69-03067546 | |
| 11/24/2003 | E69-03071340 | |
| 12/4/2003 | D52-05607588 | |
| 12/11/2003 | D52-04892710 | |
| 1/4/2004 | D52-05609030 | |
| 1/9/2004 | D52-05609345 | |
| 1/22/2004 | D52-08925599 | |
| 2/2/2004 | D52-08926019 | |
| 2/4/2004 | D52-04899814 | |
| 3/25/2004 | D52-02514993 | |

| ENTRY DATE | ENTRY NUMBER | CORRECT HTS# |
|---:|---|---|
| 5/6/2004 | D52-04913367 | |
| 7/14/2004 | D52-04922103 | |
| 8/29/2004 | D52-04933118 | |
| 9/9/2004 | D52-08937040 | |
| 9/20/2004 | E69-03098533 | |
| 10/18/2004 | D52-08938972 | |
| 10/25/2004 | E69-03101824 | |
| 11/15/2004 | D52-04942937 | |
| 12/8/2004 | D52-08941240 | |
| 12/13/2004 | D52-04952225 | |
| 12/14/2004 | E69-03106500 | |
| 2/11/2005 | D52-08943642 | |
| 4/4/2005 | E69-03116954 | |
| 4/6/2005 | D52-04967082 | |
| 4/19/2005 | E69-03118661 | |
| 5/23/2005 | E69-03121749 | |
| 6/7/2005 | D52-08949573 | |
| 7/3/2005 | D52-08950597 | |
| 7/12/2005 | D52-04987973 | |
| 8/14/2005 | D52-08953492 | |

RECEIVED & FILED

2000 APR 17 PM 1:24

U.S. COURT OF
INTERNATIONAL TRADE
OFFICE OF THE CLERK

IN ACCORDANCE WITH THE PROVISION
OF RULE 5(e). THIS PAPER IS DEEMED
FILED AS OF THE DATE OF MAILING-
TO WIT 4/14/08

ORIGINAL